# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KING DRUG COMPANY OF FLORENCE, INC., on behalf of itself and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>        **v.**<br><br>**CEPHALON, INC., ET AL.,**<br><br>**Defendants.** | **Civil Action No. 06-cv-1797-MSG**<br><br><br>**Judge Mitchell S. Goldberg** |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... i

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 3

        A.      DPC PLAINTIFFS' CLAIMS AND PROCEDURAL BACKGROUND................................. 3

        B.      SETTLEMENT NEGOTIATIONS AND THE PROPOSED SETTLEMENT ............................ 3

III.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE
        BEEN MET................................................................................................................ 4

        A.      RULE 23 REQUIREMENTS ....................................................................................... 6

                1.      Numerosity and the Impracticability of Joinder. ....................................... 6

                2.      Commonality................................................................................................ 7

                3.      Typicality .................................................................................................... 8

                4.      Adequacy of Representation ........................................................................ 8

        B.      ALL REQUIREMENTS OF RULE 23(B)(3) HAVE BEEN SATISFIED ............................ 9

                1.      Common Questions of Law and Fact Predominate ..................................... 9

                2.      A Class Action Is Superior to Other Methods of Adjudication ................. 14

                3.      Class Counsel Meet the Requirements for Appointment Under Rule 23(g)
                        .................................................................................................................... 15

IV.     THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY
        APPROVAL ............................................................................................................. 16

        A.      THE PROPOSED SETTLEMENT IS THE PRODUCT OF SERIOUS, INFORMED, ARM'S-
                LENGTH NEGOTIATIONS........................................................................................ 17

        B.      THE ADVANCED STAGE OF THIS CASE SUPPORTS PRELIMINARY APPROVAL......... 18

        C.      CLASS COUNSEL ARE HIGHLY EXPERIENCED IN ANTITRUST LITIGATION ALLEGING
                DELAYED GENERIC DRUG COMPETITION.............................................................. 18

        D.      THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL...... 19

        E.      THE PLAN OF DISTRIBUTION IS FAIR, REASONABLE, AND ADEQUATE .................. 21

        F.      THE PROPOSED FORM AND MANNER OF NOTICE ARE APPROPRIATE .................... 21

                1.      Form of Notice.......................................................................................... 21

                2.      Manner of Notice. ..................................................................................... 22

        G.      THE COURT SHOULD APPOINT BERDON AS SETTLEMENT ADMINISTRATOR .......... 23

        H.      THE COURT SHOULD APPOINT MORGAN STANLEY AS ESCROW AGENT ............... 23

        I.      THE PROPOSED SCHEDULE IS FAIR AND SHOULD BE APPROVED ........................... 23

V.      CONCLUSION....................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Am. Sales Co. v. SmithKline Beecham Corp.*,
   274 F.R.D. 127 (E.D. Pa. 2010)............................................................................5

*Amchem Prods., Inc v. Windsor*,
   521 U.S. 591 (1997)...................................................................................6, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)...............................................................................9, 10

*Austin v. Pa. Dep't of Corr.*,
   876 F. Supp. 1437 (E.D. Pa. 1995) ............................................................19

*In re Auto Refinishing Paint Antitrust Litig.*,
   2004 WL 1068807 (E.D. Pa. May 10, 2004) .............................................17

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir.1994)..............................................................................7

*In re Buspirone Patent & Antitrust Litig.*,
   210 F.R.D. 43 (S.D.N.Y. 2002) .........................................................5, 8, 12

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 297 (E.D. Mich. 2001) ....................................................5, 12, 13

*Collier v. Montgomery Cnty. Housing Auth.*,
   192 F.R.D. 176 (E.D. Pa. 2000)..................................................................19

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)...........................................................................10, 13

*Comer v. Life Ins. Co.*,
   2011 U.S. Dist. LEXIS 36042 (D.S.C. Mar. 31, 2011) ..............................23

*In re Community Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005)...........................................................................5

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)............................................................................9

*Curiale v. Lenox Grp. Inc.*,
   No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .................17, 18, 20

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 97487 (S.D.N.Y. Aug. 15, 2011) ...................................................5

*DG ex rel. Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ...................................................................................12

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................................................17

*In re Ductile Iron Pipe Fitting Direct Purchaser Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 29865 (D.N.J. Mar. 5, 2013)......................................................11

*FTC v. Actavis, Inc.*,
    133 S. Ct. 2223 (2013) ...........................................................................................3, 4

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
    604 F. Supp. 446 (E.D. Pa. 1985) ...............................................................................17

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008)........................................................................16, 18, 20

*Gintis v. Bouchard Transp. Co., Inc.*,
    596 F.3d 64 (1st Cir. 2010) ........................................................................................12

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)........................................................................................20

*Greer v. Shapiro & Kreisman*,
    2001 WL 1632135 (E.D. Pa. Dec. 18, 2001) ................................................................17

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*,
    602 F.3d 237 (3d Cir. 2010)........................................................................................11

*Hughes v. In Motion Entm't.*,
    2008 WL 3889725 (W.D. Pa. Aug. 18, 2008) ..............................................................18

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)..................................................................................10, 11

*In re Ikon Office Solutions, Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..............................................................................21, 22

*In re Imprelis Herbicide Mktg.*,
    2013 U.S. Dist. LEXIS 149323 (E.D. Pa. October 17, 2013)............................................15

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*,
    225 F.R.D. 208 (S.D. Ohio 2003)..................................................................................12

*In re Janney Montgomery Scott LLC Fin. Consultant. Litig.*,
    2009 WL 2137224 (E.D. Pa. July 16, 2009).................................................................23

*In re K-Dur Antitrust Litig.*,
    686 F.3d 197 (3d Cir. 2012).......................................................................6, 9, 10, 12

*In re K-Dur Antitrust Litig.*,
    2008 U.S. Dist. LEXIS 118396 (D.N.J. Apr. 14, 2008) .........................6, 8, 10, 11, 12, 13

*Kaplan v. Chertoff*,
    No. 06-5304, 2008 WL 200108 (E.D. Pa. Jan. 24, 2008)............................................15, 20

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
    571 F.3d 672 (7th Cir 2009) ........................................................................................12

*In re Linerboard Antitrust Litig.*,
    305 F.3d 112 (3d Cir. 2002).....................................................................................10, 12

*Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*,
    2008 U.S. Dist. LEXIS 123291 (S.D.N.Y. Apr. 8, 2008).................................................5

*Mehling v. New York Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007).............................................................................16, 18

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
    246 F.R.D. 293 (D.D.C. 2007).............................................................................. passim

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..........................................................................21

*In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 158153 (D. Del. Nov. 16, 2011) ...................................................5

*Mims v. Stewart Title Guar. Co.*,
    590 F.3d 298 (5th Cir. 2009) ........................................................................................12

*Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*,
    2014 U.S. Dist. LEXIS 21504 (E.D. Pa. Feb. 18, 2014) ...................................................5

*In re NASDAQ Market Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) .............................................................................11, 12

*In re Neurontin Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 7453 (D.N.J. Jan. 25, 2011) ....................................................5, 12

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)........................................................................................8

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    296 F.R.D. 47 (D. Mass. 2013)..............................................................................5, 12

*In re Nifedipine Antitrust Litig.*,
    246 F.R.D. 365 (D.D.C. 2007).....................................................................5, 8, 13, 19

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003)..............................................................................6, 14

*In re OxyContin Antitrust Litig.*,
    2010 U.S. Dist. LEXIS 146003 (S.D.N.Y. Sept. 27, 2010)...........................................6

*In re Prandin Direct Purchaser Antitrust Litig.*,
    2015 WL 1396473 (E.D. Mich. Jan. 20, 2015)........................................................6, 19

*In re Processed Egg Products. Antitrust Litigation*,
    284 F.R.D. 278 (E.D. Pa. 2012)..............................................................................9, 15

*In re Prograf Antitrust Litig.*,
    2013 WL 2395083 (D. Mass. Apr. 23, 2013) ....................................................5

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)...................................................................................14

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
    614 F.3d 57 (3d Cir. 2010).....................................................................................11

*In re Relafen Antitrust Litig.*,
    218 F.R.D. 337 (D. Mass. 2003).................................................................... passim

*Rochester Drug Coop., Inc. v. Braintree Labs.*,
    2012 U.S. Dist. LEXIS 190011 (D. Del. Feb. 6, 2012) ....................................5

*Samuel v. Equicredit Corp.*,
    2002 WL 970396 (E.D. Pa. May 6, 2002) ..............................................................20, 21

*In re Skelaxin Metaxalone Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 60214 (E.D. Tenn. Apr. 30, 2014)................................................5

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,
   2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007)......................................................23

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)...............................................................................................12

*Szczubelek v. Cendant Mortgage Corp.*,
   215 F.R.D. 107 (D.N.J. 2003)................................................................................................7

*In re Terazosin Hydrochloride Antitrust Litig.*,
   2005 U.S. Dist. LEXIS 46189 (S.D. Fla. March 18, 2005) ................................................6

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
   252 F.R.D. 213 (D. Del. 2008) ..................................................................................5, 8, 12, 13

*Thomas v. NCO Fin. Sys., Inc.*,
   2002 U.S. Dist. LEXIS 14157 (E.D. Pa. July 31, 2002).............................................16, 17

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
   530 F.3d 204 (3d Cir. 2008)................................................................................................11

*Upsher- Smith Labs., Inc. v. Louisiana Wholesale Drug Co., Inc.*,
   133 S. Ct. 2849 (2013)..........................................................................................................6

*Valley Drug Co. v. Geneva Pharms.*,
   350 F.3d 1181 (11th Cir. 2003) ............................................................................................6

*Varacallo v. Mass Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)..............................................................................................17

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965)...............................................................................................................3

*In re Warfarin Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)................................................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D.Del. 2002) ............................................................................................12

*Weisfeld v. Sun Chem. Corp.*,
   84 Fed. Appx. 257 (3d Cir. 2004).......................................................................................10

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
   2008 WL 1946848 (E.D. Pa. May 2, 2008).............................................................5, 12, 13

v

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
    2008 U.S. Dist. LEXIS 36719 (E.D. Pa. May 2, 2008) ...................................14

*In re Wellbutrin XL Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 90075 (E.D. Pa. Aug. 11, 2011).................................5, 8

*Wilson v. United Intern. Investigative Servs. 401(k) Sav. Plan*,
    2002 WL 734339 (E.D. Pa. Apr. 23, 2002) .................................................23

*Zenith Radio Corp. v. Hazeltine Research*,
    395 U.S. 100 (1969)...............................................................................12

## DOCKETED CASES

*In re Buspirone Antitrust Litig.*,
    MDL Docket No. 1413 (S.D.N.Y.).........................................................19, 20

*In re Cardizem CD Antitrust Litig.*,
    No. 99-md-1278 (E.D. Mich.) ....................................................................19

*In re Children's Ibuprofen Oral Suspension Antitrust Litig.*,
    No. 1:04 CV-01620 (D.D.C.)......................................................................19

*In re D.D.A.V.P. Antitrust Litig.*,
    No. 05 Civ 2237 (S.D.N.Y.) .......................................................................19

*In re Flonase Antitrust Litig.*,
    No. 08-cv-3149 (E.D. Pa.) .........................................................................22

*Meijer, Inc. et al v. Biovail Corp. et al.*,
    No. 2:08-cv-02431 (E.D. Pa.) .....................................................................22

*Meijer, Inc. et al. v. Warner Chilcott, & Barr Pharma. Inc. et al.*,
    No. 05-2195 (D.D.C.) ...............................................................................19

*Mylan Pharma., Inc. v. Warner Chilcott, LTD*,
    No. 12-cv-3824 (E.D. Pa) .....................................................................19, 22

*In re Neurontin Antitrust Litig.*,
    No. 02-1830 (D.N.J.) ...............................................................................19

*North Shore Hematology-Oncology Assoc., P.C. v. Bristol Myers Squibb Co.*,
    No. 1:04-cv-248 (D.D.C.) ..........................................................................19

*In re OxyContin Antitrust Litig.*,
    No.04 md 1603 (S.D.N.Y. Stein, J.) (Jan. 25, 2011) .........................................19

*In re Prandin Direct Purchaser Antitrust Litig.*,
    No. 2:10-cv12141 (E.D. Mich. Cohn, J.) (Jan. 20, 2015) ................................. 19

*In re Relafen Antitrust Litig.*,
    No. 01-12239 (D. Mass. April 9, 2004) ...................................................... 19

*In re Remeron Antitrust Litig*,
    No. 03-CV-0085 (D.N.J.) ............................................................................ 19

*Rochester Drug Co-Operative et al. v. Braintree Labs. Inc.*,
    No-07-142 (D. Del.) .................................................................................. 19

*In re Terazosin Hydrochloride Antitrust Litig.*,
    No. 99-mdl-1317 (S.D. Fla.) ....................................................................... 19

*In re Tricor Antitrust Litig.*,
    No. 05-340, Dkt. No. 543 (D. Del.) ....................................................... 17, 20

*In re Wellbutrin SR Antitrust Litig.*,
    No.04-5525 (E.D.Pa.) ................................................................................ 19

## FEDERAL STATUTES

15 U.S.C. §§ 1-2 ..................................................................................................... 11

28 U.S.C. § 1715 ................................................................................................... 25

## FEDERAL RULES

Fed. R. Civ. P. 23 ........................................................................................... passim

## MISCELLANEOUS

MANUAL FOR COMPLEX LITIGATION (4th ed. 2005) ....................................... 17, 22, 23

NEWBERG ON CLASS ACTIONS (4th ed. 2011) ................................................... 8, 20

Direct Purchaser Class Plaintiffs King Drug Co. of Florence, Inc., Rochester Drug Co-Operative, Inc., Burlington Drug Co., Inc., J.M. Smith Corp. d/b/a Smith Drug Co., Meijer, Inc., Meijer Distribution, Inc., Stephen L. LaFrance Pharmacy d/b/a SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc. ( "DPC Plaintiffs" or "Plaintiffs") respectfully submit this Memorandum of Law in support of their Unopposed Motion for Certification of a Settlement Class, Appointment of Class Counsel, Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class and Proposed Schedule for a Fairness Hearing.

## I.   INTRODUCTION

After nearly a decade of litigation and three rounds of mediation, DPC Plaintiffs and the Cephalon Defendants[1] have reached a settlement by which the Cephalon Defendants will pay $512 million in cash into an escrow fund for the benefit of all members of the Class (the "Class")[2] in exchange for dismissal of the litigation between DPC Plaintiffs and the Cephalon Defendants with prejudice and certain releases (the "Settlement").[3] The Settlement is the largest ever in a delayed generic drug entry case on behalf of direct purchasers. All the terms of the Settlement are set forth in the Settlement Agreement dated April 17, 2015 ("Settlement Agreement") (annexed as Exhibit 1 to the Declaration of Bruce E. Gerstein).

Preliminary approval of the Settlement is appropriate. DPC Plaintiffs and the Cephalon Defendants entered into the Settlement after intense, fully-developed litigation, a looming trial,

---

[1] The Cephalon Defendants are Cephalon, Inc., Teva Pharmaceutical Industries, Ltd., Teva Pharmaceuticals USA, Inc., and Barr Pharmaceuticals, Inc.

[2] The Class is defined below at pp. 4-5.

[3] Defendants Mylan Pharmaceuticals, Inc. and Mylan Inc. (formerly known as Mylan Laboratories, Inc. (collectively "Mylan") and Ranbaxy Laboratories, Ltd. and Ranbaxy Pharmaceuticals, Inc. (collectively "Ranbaxy") are not parties to the Settlement, and thus DPC Plaintiffs' pending claims against Mylan and Ranbaxy remain. The Cephalon Defendants, Mylan, and Ranbaxy are collectively referred to as "Defendants."

and extensive mediation and negotiations.  Counsel for both sides are experienced in class actions generally and pharmaceutical antitrust litigation in particular, and are well-positioned to assess the risks and merits of this case.  The Cephalon Defendants do not oppose certification of a direct purchaser class under Federal Rule of Civil Procedure 23 for purposes of the Settlement. The Settlement assures that all Class members will receive a substantial cash settlement payment now, and that the litigation against the Cephalon Defendants will be put to rest, while avoiding continued litigation and potential appeals.

Accordingly, DPC Plaintiffs respectfully request that the Court enter the proposed order (Exhibit A to the Settlement Agreement) which provides for the following:

1. Preliminarily approval of the proposed Settlement Agreement and the documents necessary to effectuate the Settlement, including a proposed form of notice to the Class (Exhibit B to the Settlement Agreement) and a proposed plan of distribution for settlement funds as described in the proposed form of notice;

2. Certification of the Class for purposes of settlement;

3. Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and 23(g), reaffirming Lead Counsel, Liaison Counsel and an Executive Committee as Class Counsel for purposes of settlement;

4. Appointment of Berdon Claims Administration LLC ("Berdon") as settlement administrator;

5. Appointment of Morgan Stanley Smith Barney LLC ("Morgan Stanley") as escrow agent for the settlement funds (Escrow Agreement annexed as Exhibit D to the Settlement Agreement); and

6. A proposed settlement schedule, including the scheduling of a Fairness Hearing during which the Court will consider: (a) DPC Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment (Exhibit C to the Settlement Agreement); (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and incentive awards to the named class plaintiffs; and (c) DPC Plaintiffs' request for dismissal of this action against the Cephalon Defendants with prejudice.

## II.       BACKGROUND

### A.       DPC Plaintiffs' Claims and Procedural Background

In April 2006, DPC Plaintiffs filed the first antitrust lawsuit on behalf of all direct

purchasers challenging Defendants' conduct regarding the prescription pharmaceutical Provigil.[4]

DPC Plaintiffs alleged that Defendants had unlawfully delayed the availability of less expensive,

generic versions of Provigil through, *inter alia*, unlawful "reverse payment" agreements.  DPC

Plaintiffs further alleged that defendant Cephalon had obtained U.S. Patent No. RE 37,516 ("RE

'516 patent") by fraud, then used that patent to delay generic competition for Provigil.[5]

Defendants twice moved to dismiss DPC Plaintiffs' complaint, and DPC Plaintiffs prevailed

after extensive briefing and oral argument. The case then proceeded through intensive discovery,

including production and review of millions of pages of documents, dozens of expert reports, and

dozens of depositions (fact and expert). During and after discovery, the parties briefed and

argued multiple rounds of dispositive and other motions, including summary judgment motions

relating to  *FTC v. Actavis*, *Inc.*, 133 S. Ct. 2223 (2013).

The Court recently held hearings on certain of DPC Plaintiffs' *Daubert* motions, and

DPC Plaintiffs' motion for class certification, and such motions are pending.  A bench trial in the

Federal Trade Commission's ("FTC") case is scheduled for June 2015.

### B.       Settlement Negotiations and the Proposed Settlement

The settlement negotiations between Class Counsel and attorneys for the Cephalon

Defendants were hard fought and at arm's-length, and included three rounds of mediation over a

22-month period, once with Magistrate Judge Strawbridge, and twice with a private mediator,

Jonathan Marks.  Both sides made presentations as to the strengths and weaknesses of their

---

[4] *See* ECF No. 1.

[5] *See Walker Process Equip.*, *Inc. v. Food Mach. & Chem.* Corp., 382 U.S. 172 (1965).

respective cases.  Class Counsel assessed this action in the light of their extensive sixteen year experience litigating similar delayed generic entry cases, and in light of *Actavis* and numerous opinions issued by the district court.

The Cephalon Defendants will pay $512 million in cash for the benefit of all Class members in exchange for dismissal of the litigation between DPC Plaintiffs and the Cephalon Defendants and certain releases. The proposed Settlement Agreement provides that even if the Court does not approve the settlement for any reason other than that the settlement is not fair, reasonable or adequate (including because the Court does not certify the Class for purposes of settlement) the Cephalon Defendants will offer Class members their *pro rata* allocated share of the settlement fund (subject to 40% of each share being placed into escrow while the Court reviews Class Counsel's petition for attorney's fees, costs, and incentive awards for the named plaintiffs).

DPC Plaintiffs have proposed the form and manner of providing notice of the proposed Settlement Agreement to the Class, and the procedures by which: (a) Class members may receive their share of settlement funds; (b) Class members may seek exclusion from the Class or object to the proposed Settlement Agreement; (c) Class Counsel shall apply for attorney's fees of no more than one-third of the settlement amount and reimbursement of expenses incurred in prosecuting this action and for service awards to the named plaintiffs for their efforts on behalf of the Class.  Final approval of the proposed Settlement Agreement will result in the dismissal with prejudice of DPC Plaintiffs' claims in their entirety against the Cephalon Defendants.

## III.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET

DPC Plaintiffs and the Cephalon Defendants have agreed, subject to the Court's review and approval, to a Class for purposes of settlement defined as follows:

4

All persons or entities in the United States and its territories who purchased Provigil in any form directly from Cephalon at any time during the period from June 24, 2006 through August 31, 2012 (the "Class"). Excluded from the Class are Defendants, and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities.

Also excluded from the Class are: Rite Aid Corporation, Rite Aid HDQTRS. Corp., JCG (PJC) USA, LLC, Eckerd Corporation, Maxi Drug, Inc. d/b/a Brooks Pharmacy, and CVS Caremark Corporation, Walgreen Co., The Kroger Co., Safeway Inc., American Sales Co. Inc., HEB Grocery Company, LP, Supervalu, Inc., and Giant Eagle, Inc., and their officers, directors, management, employees, subsidiaries, or affiliates in their own right and as assignees from putative Direct Purchaser Class members as more fully described in Paragraph 10 herein ("Opt Out Plaintiffs").[6]

In their class certification papers,[7] DPC Plaintiffs cited 19 similar generic delay cases in which courts have certified similar classes, including six certified for purposes of settlement.[8]

---

[6] *See* Settlement Agreement at ¶ 1.

[7] *See King Drug* Direct Purchaser Class Plaintiffs' Memorandum of Law in Support of Their Motion for Certification of the Direct Purchaser Class (ECF No. 665) ("Pls.' Class Cert. Mem.") and Reply Brief in Support of *King Drug* Direct Purchaser Class Plaintiffs' Motion for Certification of the Direct Purchaser Class (ECF No. 714) ("Pls.' Class Cert. Reply").

[8] *See* Pls.' Class Cert. Mem. at p. 1 (citing *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47 (D. Mass. 2013); *In re Prograf Antitrust Litig.*, 2013 WL 2395083 (D. Mass. Apr. 23, 2013); *In re Wellbutrin XL Antitrust Litig.*, 2011 U.S. Dist. LEXIS 90075 (E.D. Pa. Aug. 11, 2011) ("*Wellbutrin XL*"); *In re Neurontin Antitrust Litig.*, 2011 U.S. Dist. LEXIS 7453 (D.N.J. Jan. 25, 2011); *Am. Sales Co. v. SmithKline Beecham Corp.*, 274 F.R.D. 127 (E.D. Pa. 2010) ("*Flonase*"); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848 (E.D. Pa. May 2, 2008); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213 (D. Del. 2008) ("*TriCor*"); *Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, 2008 U.S. Dist. LEXIS 123291 (S.D.N.Y. Apr. 8, 2008) ("*Arava*"); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365 (D.D.C. 2007) ("*Nifedipine*"); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293 (D.D.C. 2007) ("*Ovcon*"); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001). *See also In re Skelaxin Metaxalone Antitrust Litig.*, 2014 U.S. Dist. LEXIS 60214 (E.D. Tenn. Apr. 30, 2014) (certifying class upon settlement); *Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*, 2014 U.S. Dist. LEXIS 21504 (E.D. Pa. Feb. 18, 2014) ("*Doryx*") (same); *Rochester Drug Coop., Inc. v. Braintree Labs.*, 2012 U.S. Dist. LEXIS 190011 (D. Del. Feb. 6, 2012) ("*Miralax*")(same); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 U.S. Dist. LEXIS 97487 (S.D.N.Y. Aug. 15, 2011) (same); *In re*

And, the Third Circuit unanimously affirmed certification of a litigation class in *In re K-Dur Antitrust Litigation*.[9]  Like every similar case before it,[10] this case meets all requirements of class certification (particularly in light of settlement) and should be certified.

DPC Plaintiffs incorporate by reference their prior briefs showing why this case satisfies all requirements under Rule 23.  These same requirements apply when certifying a class in connection with settlement, except that "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."[11]

DPC Plaintiffs' class certification papers previously discussed in detail the requirements for class certification; DPC Plaintiffs briefly review them here.

### A.     Rule 23 Requirements

#### 1.     Numerosity and the Impracticability of Joinder.

---

*Metoprolol Succinate Direct Purchaser Antitrust Litig*., 2011 U.S. Dist. LEXIS 158153 (D. Del. Nov. 16, 2011) ("*Toprol*") (same); *In re OxyContin Antitrust Litig*., 2010 U.S. Dist. LEXIS 146003 (S.D.N.Y. Sept. 27, 2010) (same)).  After class briefing was complete, a settlement class was certified in *In re Prandin Direct Purchaser Antitrust Litig*., 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015). Settlement classes must satisfy all requirements of Rule 23 except manageability. *See e.g., In re Community Bank of N. Va.,* 418 F.3d 277, 299-300 (3d Cir. 2005) (citation omitted).

[9] *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 221 (3d Cir. 2012), *judgment vacated sub nom. on other grounds*, Upsher- Smith Labs., Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013) and *Merck & Co., Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013), *reinstatement granted*, 2013 WL 5180857 (3d Cir. Sept. 9, 2013). The Third Circuit's *K-Dur* decision affirmed *In re K-Dur Antitrust Litig.*, 2008 U.S. Dist. LEXIS 118396 (D.N.J. Apr. 14, 2008).

[10] The Eleventh Circuit vacated class certification in *Valley Drug Co. v. Geneva Pharms.*, 350 F.3d 1181 (11th Cir. 2003), citing potential "conflicts" from the profit effects on direct purchasers of delayed generic competition, but that opinion and analysis were expressly rejected by the Third Circuit.  *See K-Dur*, 686 F.3d at 223. Even in *Valley Drug*, the district court certified a class on remand in connection with settlement.  *See In re Terazosin Hydrochloride Antitrust Litig.,* 2005 U.S. Dist. LEXIS 46189 (S.D. Fla. March 18, 2005).

[11] *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 620 (1997). *See also O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 291 (E.D. Pa. 2003).

Whether joiner is impracticable "depends on the circumstances surrounding the case and not merely on the number of class members."[12]  Geographic dispersion of the class and judicial economy are factors which strongly support certification here,[13] as the proposed Class includes (at least) 22 members, spread across thirteen states and Puerto Rico.[14] Litigating – or even settling – the antitrust claims of such a geographically dispersed class on a one-by-one basis is impracticable, especially when such claims can be resolved, as here, via settlement on a classwide basis.  This is particularly true given the extreme complexity of this multi-party antitrust case and volume of discovery and motion practice associated with it.  *Every* court in *every* similar case has certified a litigation and/or a settlement class.[15]  The result here should be no different.[16]

### 2.  Commonality

Rule 23(a)(2) requires questions of law or fact common to the class.[17]  This requirement is "easily met,"[18] and especially so in an antitrust case, where "[a]n allegation of … monopolization [ ] or conspiracy will be viewed as a central or single overriding issue or a

---

[12] *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003).

[13] Pls.' Class Cert. Reply at 3.

[14] Pls.' Class Cert Mem. at 11.  Mylan and Ranbaxy argue that the Class includes 18 members, and DPC Plaintiffs have previously addressed these arguments.  *See* Pls.' Class Cert. Reply at 6-7.  Mylan and Ranbaxy argue that King Drug and Drogueria Betances should be excluded from the class, but their arguments are meritless, and the Cephalon Defendants have agreed to settle with a class that *includes* both.  Regardless, under the circumstances surrounding this case, numerosity is satisfied for a class of 20 or 18 as well.

[15] *Id.*

[16] *See* Pls.' Class Cert Mem. at 10-11; Pls.' Class Cert. Reply at 3-8.

[17] *See* Pls.' Class Mem. at 13.

[18] *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994).

common nucleus of operative fact and will establish a common question."[19]  Here, as in all delayed generic entry cases, all class members allege injury due to the same misconduct.[20]

### 3.    Typicality

Rule 23(a)(3) requires that "the claims  . . . of the representative parties [be] typical of the claims  . . . of the class."  "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."[21]  The typicality requirement is satisfied even if some class members have larger damage claims than others or are proceeding under assignment because "typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff."[22] *See* Pls.' Class Cert. Mem. at 14.  In every similar case, courts have found the typicality prong met because the named plaintiffs asserted that defendant's conduct had delayed generic entry, and sought overcharges for themselves and the class.[23]  For the same reasons, typicality is met here.[24]

### 4.    Adequacy of Representation

---

[19] 6 Wm. B. Rubinstein, NEWBERG ON CLASS ACTIONS § 18:5 (4th ed. 2011). *See also* Pls.' Class Mem. at 13.

[20] *See, e.g., Wellbutrin XL*, 2011 U.S. Dist. LEXIS 90075, at *13-14 (direct purchaser class members' claims depended on common issues such as whether: "defendants engaged in a scheme to delay the entry of less expensive generic versions of Wellbutrin XL" which resulted in delayed generic entry); *Wellbutrin SR*, 2008 WL 1946848, at *2 (similar); *Tricor*, 252 F.R.D. at 225 (similar); *K-Dur*, 2008 U.S. Dist. LEXIS 118396, at *23 (similar); *Nifedipine*, 246 F.R.D. at 368-69 (similar); *Ovcon*, 246 F.R.D. at 300 (similar).

[21] *Processed Egg Prods. Antitrust Litigation*, 284 F.R.D. 278, 290 (E.D. Pa. 2012) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).

[22] *Ovcon*, 246 F.R.D. at 301-02.

[23] *See, e.g., Wellbutrin XL*, 2011 U.S. Dist. LEXIS 90075, at *15; *TriCor*, 252 F.R.D. at 226; *Wellbutrin SR*, 2008 WL 1946848, at *3; *K-Dur*, 2008 U.S. Dist. LEXIS 118396 at *29-30; *Nifedipine*, 246 F.R.D. at 368-69; *Ovcon*, 246 F.R.D. at 301-02; *Relafen*, 218 F.R.D. at 343; *Buspirone*, 210 F.R.D. at 57.

[24] *See* Pls.' Class Cert. Mem. at 14.

Both prongs of Rule 23(a)(4) are satisfied: (1) the class representatives' interests do not conflict with the class members' interests; and (2) the class representatives and their counsel are able to prosecute the action vigorously.[25]  As the Third Circuit held in *K-Dur* (and as true here), "all of the class members have the same financial incentive for purposes of the litigation - *i.e.*, proving that they were overcharged and recovering damages based on that overcharge."[26] Counsel's qualifications are discussed below.[27]

### B.     All Requirements of Rule 23(b)(3) Have Been Satisfied

Rule 23(b)(3) requires: (1) that the Court find that common questions of law or fact predominate over individual questions; and (2) that a class action is superior to other available methods of adjudication.  Both requirements are met here.

### 1.     Common Questions of Law and Fact Predominate

As DPC Plaintiffs previously explained, common issues here predominate over any individual questions.[28]  Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'"[29] Predominance requires that "*questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[30] "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"[31]

---

[25] *See* Pls.' Class Cert Mem. at 14-15; Pls.' Class Cert. Reply at 15 n. 62.

[26] *K-Dur,* 686 F.3d at 223.

[27] *See infra* at pp. 15-16.

[28] Pls.' Class Cert. Mem. at 15-24; Pls.' Class Cert. Reply at 9-15.

[29] *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 108 (2d Cir. 2007).

[30] *Amgen*, 133 S. Ct. at 1191 (emphasis in original).

[31] *Id.*

In *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184 (2013), the Supreme Court explained that, "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof" but rather that "common questions 'predominate over any questions affecting only individual [class] members.'"[32]  If common issues and evidence have greater overall significance, the presence of individual issues will not defeat predominance.[33]  And in *K-Dur*, the Third Circuit reminded courts that "for certification plaintiff need not prove antitrust injury actually occurred."[34]  Rather, the plaintiff need only "demonstrate that the element of antitrust impact is *capable of proof at trial* through evidence that is common to the class rather than individual to its members."[35]

Under *Comcast*, the Court has a "duty to take a 'close look' at whether common questions predominate over individual ones."[36]  That "close look" shows that, as in every prior case alleging impaired generic drug competition,[37] the predominance standard is met here.

---

[32] *Id.* at 1196 (emphases and alterations in original).

[33] *See Weisfeld v. Sun Chem. Corp.,* 84 Fed. Appx. 257, 262-63 (3d Cir. 2004) (test was "whether Weisfeld's attempt to prove antitrust injury would predominately involve common legal and factual questions . . . Rule 23(b) does not require the absence of individual issues, only that they have less overall significance than issues common to the class. Some individual issues will almost always be present in a class action"); *In re Linerboard Antitrust Litig.,* 305 F.3d 112, 162 (3d Cir. 2002) ("most courts have refused to deny class certification simply because there will be some individual questions raised during the proceedings"; *K-Dur,* 2008 U.S. Dist. LEXIS 118396, at *47 ("[t]he existence of individual issues does not necessarily defeat certification, as long as the individualized issues have less overall significance than the issues common to the class and they are manageable in a single class action") (citing *Weisfeld*); *In re School Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir. 1986) (If resolution of even a few common issues "will so advance the litigation [] they may fairly be said to predominate.").

[34] *K-Dur,* 686 F.3d at 222.

[35] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008) (emphasis added).

[36] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotation omitted).

[37] *See supra,* n. 8.  *See also In re Warfarin Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (Sherman Act § 2 claim in indirect purchaser antitrust case alleging suppression of generic drug

DPC Plaintiffs have alleged claims against the Cephalon Defendants for violations of Sections One and Two of the  Sherman Act, 15 U.S.C. §§ 1-2.[38]  Plaintiffs must ultimately prove a violation of the antitrust laws, resulting antitrust injury, and measurable damages. [39]

Proof of the Cephalon Defendants' alleged misconduct "will not vary among class members."[40]  The anticompetitive conduct alleged involves evidence common to the Class, including whether the RE '516 patent was fraudulently obtained and the legality of the agreements between Cephalon and Teva and Cephalon and Barr.

Likewise, demonstrating antitrust injury presents predominantly common issues. Antitrust injury, or impact,[41] – requires a showing of "some damage" due to a defendant's

---

competition "naturally raise[d] several questions of law and fact common to the entire class and which predominate over any issues related to individual class members," including the unlawfulness of the defendant's conduct, the causal linkage between the defendant's conduct and the injury suffered by the class members, and the nature of the relief to which class members are entitled).

[38] *See generally* Second Consolidated Amended Class Action Complaint.

[39] *In re Hydrogen Peroxide*, 552 F.3d at 311. To succeed on a section 1 claim, a plaintiff must show that (1) the defendant was a party to a contract, combination, or conspiracy, and (2) that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade. *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.,* 530 F.3d 204, 218 (3d Cir. 2008). The elements of a section 2 monopolization claim are: (1) the possession of monopoly power, and (2) the willful acquisition and maintenance of that power as distinguished from growth or development or consequences of a superior product, business acumen, or historical accident. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 75 (3d Cir. 2010). The elements of conspiracy to monopolize are: "'(1) an agreement to monopolize; (2) an overt act in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) a causal connection between the conspiracy and the injury alleged.'" *In re Ductile Iron Pipe Fitting Direct Purchaser Antitrust Litig.*, 2013 U.S. Dist. LEXIS 29865, at *58 (D.N.J. Mar. 5, 2013) (quoting *Howard Hess Dental Labs. Inc. v. Dentsply Intern.*, *Inc*., 602 F.3d 237, 253 (3d Cir. 2010)).

[40] *In re NASDAQ Market Makers Antitrust Litig.,* 169 F.R.D. 493, 518 (S.D.N.Y. 1996).

[41] *See In re Hydrogen Peroxide*, 552 F.3d at 311; *K-Dur*, 2008 U.S. Dist. LEXIS 118396, at *50-51.

antitrust violation.[42]  This element is satisfied where common evidence is available to show that there is "widespread injury to the class[,]"[43] and class certification remains available even if some class members may ultimately be shown to have been uninjured.[44]  The Third Circuit in *K-Dur* confirmed that in generic delay cases, impact can be demonstrated if purchasers pay more for a drug due to delayed generic competition.[45]  As previously explained, DPC Plaintiffs rely on evidence here that is consistent with *K-Dur* and every other class decision in similar generic delay cases.[46]

---

[42] *See Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n. 9 (1969); *Linerboard*, 305 F. 3d at 151.

[43] *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D.Del. 2002) (quoting *NASDAQ*, 169 F.R.D. at 523); *Neurontin*, 2011 U.S. Dist. LEXIS 7453, at *36-37 n. 23 ("widespread injury to the class" sufficient).

[44] *K-Dur,* 686 F.3d at 221-22 (that some class members have "zero" or "negative" damages does not defeat certification if "all (or virtually all) members of the proposed class" were harmed); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (en banc) (rejecting argument that would require "each class member possess[] a valid claim under the applicable substantive laws"); *Kohen v. Pac. Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir 2009)("What is true is that a class will often include persons who have not been injured by the defendant's conduct . . . Such a possibility or indeed inevitability does not preclude class certification"); *Gintis v. Bouchard Transp. Co., Inc.*, 596 F.3d 64, 66-67 (1st Cir. 2010) ("damages for at least a very substantial proportion of the claims that can be brought by putative class members.") (Souter, A.J., sitting by designation); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009); *Kohen,* 571 F.3d at 677 ("[A] class will often include persons who have not been injured by the defendant's conduct; [. . .] Such a possibility or indeed inevitability does not preclude class certification, despite statements in some cases that it must be reasonably clear at the outset that all class members were injured by the defendant's conduct.") (internal citations omitted); *Nexium*, 296 F.R.D. at 58 (same).

[45] *K-Dur*, 686 F. 3d at 221.

[46] *See, e.g., Nexium*, 296 F.R.D. at 55-59; *Tricor*, 252 F.R.D. at 229; *Neurontin*, 2011 U.S. Dist. LEXIS 7453, at *26-39; *Wellbutrin SR*, 2008 WL 1946848, at *7-10; *K-Dur*, U.S. Dist. LEXIS 118396, at *59-61; *Ovcon*, 246 F.R.D. at 308-10; *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 218 (S.D. Ohio 2003)("*Premarin")*; *Relafen*, 218 F.R.D. at 343-46; *Buspirone*, 210 F.R.D. at 58; *Cardizem*, 200 F.R.D. at 307-21.

DPC Plaintiffs' economist, Dr. Leitzinger (the same expert as in *K-Dur*), sets forth four types of classwide common evidence to demonstrate antitrust impact: (1) research showing that generics are priced well below the corresponding brand and that purchases quickly switch from brand to generic; (2) internal business planning documents used by Defendants and plaintiff Apotex predicting this same pattern would play out once generic versions of Provigil became available; (3) observations that virtually all members of the Class are resellers (wholesalers and retailers) who must respond to customer demand and so must buy generics once they are available; and (4) analysis of data on sales and prices once generic Provigil finally launched in March 2012 showing that, indeed, generic Provigil was priced substantially below the brand and purchases quickly switched from the brand to the generic.  These sources of evidence, independently and in combination, support Dr. Leitzinger's conclusion that all (or nearly all) class members suffered some overcharge,[47] and are precisely the kind of common evidence that other courts in similar cases have found sufficient to satisfy plaintiff's burden of proof on the issue of antitrust impact.[48]

As for damages, even if individual issues arise, that is no bar to certification (before or after *Comcast*), and Class members will get notice of the plan of allocation explaining how each Class member's share of the $512 million settlement will be calculated.[49]

---

[47] *See* Pls.' Class Mem. at 18-20.

[48] *See e.g., K-Dur,* 2008 U.S. Dist. LEXIS 118396, at *59-60 (scholarly studies, defendants documents, and data analysis are "precisely the types of evidence" found sufficient to meet predominance requirement in other cases alleging delayed generic entry); *Wellbutrin SR*, 2008 WL 1946848, *8 n.20; *Tricor*, 252 F.R.D. at 229; *K-Dur*; *Nifedipine*, 246 F.R.D. at 369-71 & n.10; *Ovcon*, 246 F.R.D. at 308-09; *Relafen*, 218 F.R.D. at 345-46; *Cardizem*, 200 F.R.D. at 308; *Premarin*, 225 F.R.D. at 217-18.

[49] *See* Pls.' Class Cert. Mem. at 21-24; Pls.' Class Cert Reply at 9-15.  Dr. Leitzinger has calculated aggregate, classwide damages, and the Cephalon Defendants, again, have raised no objection on predominance with respect to certification of a class for purposes of settlement.

## 2.     A Class Action Is Superior to Other Methods of Adjudication[50]

Rule 23(b)(3) provides that the court may assess the superiority of the class action mechanism by weighing class members' interest in pursuing separate actions, the extent of any independent litigation already commenced by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of the class action.[51]  Certification will not present manageability concerns, particularly in a settlement context because there will be no trial.[52]  Moreover, class treatment is superior to other means of resolving antitrust cases brought by purchasers or consumers.[53]  This is especially true given that this case has progressed over a nine year period, all discovery (expert and fact) has been conducted and all dispositive motions have been addressed, *Daubert* motions have been briefed and argued, and trial as to the remaining defendants is imminent.  Having this matter remain in this Court as a certified class action is far superior and more manageable than having it start all over again on behalf of every single class member in multiple federal courts around the country.

---

[50] Pls.' Class Cert. Mem. at 24-25 and and Pls.' Class Cert. Reply at 8-9.

[51] Fed. R. Civ. 23(b)(3).  *See also Amchem Prods.*, 521 U.S. at 615 (the requirement of superiority ensures that resolution by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bring about other undesirable results.").

[52]  *Amchem Prods.*, 521 U.S. at 620; *O'Keefe*, 214 F.R.D. at 291.

[53] *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 315-16 (3d Cir. 1998); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 U.S. Dist. LEXIS 36719 at *38 ("In the instant case, denying certification would require each direct purchaser to file suit individually at the expense of judicial economy and litigation costs for each party."); *see also Processed Egg Prods.*, 284 F.R.D. at 294 ("[A] class action device enables individual direct purchasers to pursue their claims in an economically feasible manner, with greater efficacy in achieving enforcement and deterrence goals, and with greater bargaining power for settlement purposes.").

14

Class certification also limits the likelihood of inconsistent rulings.[54] Certification of the Class is plainly the superior method by which Class members can obtain compensation for their injuries.

### 3. Class Counsel Meet the Requirements for Appointment Under Rule 23(g)[55]

Under Rule 23(g), a court that certifies a class must appoint class counsel. Class counsel is charged with fairly and adequately representing the interests of the class.[56] In appointing class counsel, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.[57]

The Court previously appointed Garwin Gerstein & Fisher LLP ("GGF") as Lead Counsel for the Class,[58] Berger & Montague, P.C. as Liaison Counsel and member of the Executive Committee, and additional counsel as members of the Executive Committee, and DPC Plaintiffs respectfully request that the Court reaffirm these appointments.[59] Harnessing the

---

[54] *See Relafen*, 218 F.R.D. at 347 ("Resolution by class action would instead promote uniform treatment of class members-similarly situated direct purchasers who allege similar injuries resulting from the same conduct.").

[55] The adequacy of class counsel is also discussed in Pls.' Class Cert. Mem. at 14-15.

[56] *See* Fed. R. Civ. P. 23(g)(1)(B).

[57] *See* Fed. R. Civ. P. 23(g)(1)(A)(i-iv). *See also In re Imprelis Herbicide Mktg.*, 2013 U.S. Dist. LEXIS 149323, *15-16 (E.D. Pa. October 17, 2013).

[58] *See* ECF No. 196 (Order Regarding Organization of Counsel in the King Drug Direct Purchaser Class Action).

[59] Other Class Counsel include Odom & Des Roches LLP (previously appointed Executive Committee Member), Smith Segura Raphael LLP (formerly known as The Smith Foote Law Firm LLP, previously appointed Executive Committee Member), Nast Law LLC (formerly known as RodaNast, P.C., previously appointed Executive Committee Member), Linda Nussbaum of Grant & Eisenhofer (formerly of Kaplan Fox & Kilsheimer LLP, previously appointed Executive Committee Member), Faruqi & Faruqi LLP (counsel for named plaintiff Rochester Drug Co-Operative, Inc.) and Heim Payne & Chorush LLP.

experience garnered by litigating antitrust cases resulting from unlawful generic suppression for more than 16 years, Class Counsel investigated and then filed the first antitrust action challenging Defendants' conduct at issue here, and vigorously pursued the litigation on behalf of the proposed Class for nearly a decade.  As noted above, Class Counsel engaged in an extensive fact and expert discovery and motion practice, has already expended more than three million dollars in litigating this case and will commit further and necessary hours and funds to assure that the Class is well represented in this litigation. Class Counsel has capably represented the Class throughout the litigation and thus should be appointed as Class Counsel.

## IV.  THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Preliminary approval of a proposed class settlement is warranted if the court determines it has no grounds to doubt the settlement's fairness, the settlement has no obvious deficiencies, and the settlement appears to fall within the range of possible approval.[60]  "The preliminary approval decision is not a commitment to approve the final settlement; rather, it is a determination that there are no obvious deficiencies and the settlement falls within the range of reason."[61] Accordingly, preliminary approval does not require a court to reach any ultimate conclusions on the merits of the litigation.[62]  Instead, "[t]his analysis often focuses on whether the settlement is the product of arm's-length negotiations."[63]

---

[60] *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Thomas v. NCO Fin. Sys., Inc.*, 2002 U.S. Dist. LEXIS 14157, *5 (E.D. Pa. July 31, 2002); *Greer v. Shapiro & Kreisman*, 2001 WL 1632135, *3 (E.D. Pa. Dec. 18, 2001).

[61] *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (internal quotations and citation omitted).

[62] *See Thomas*, 2002 U.S. Dist. LEXIS 14157 at *5 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974)).

[63] *Curiale v. Lenox Grp. Inc.*, No. 07-1432, 2008 WL 4899474, *4 (E.D. Pa. Nov. 14, 2008).  *See also In re Auto Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, *2 (E.D. Pa. May 10, 2004)

In a court's evaluation of a proposed settlement, the "professional judgment of counsel involved in the litigation is entitled to great weight."[64] Here, Class Counsel have been litigating similar delayed generic entry cases since the late 1990s, and are recommending a settlement that is more than twice as large as any prior settlement in a similar case (with two defendants still remaining).[65]

A hearing is not necessary or required under Rule 23(e) at the preliminary approval stage. As explained in the Manual for Complex Litigation (the "Manual"), "[i]n some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."[66] Obviously, the named class plaintiffs and Class Counsel are available at the Court's convenience if it wishes to hold a hearing.

A. **The Proposed Settlement Is the Product of Serious, Informed, Arm's-Length Negotiations**

If a court finds that a settlement is the result of good-faith, serious, arm's-length negotiations, the settlement is entitled to a presumption of fairness because such negotiations guard against any "obvious deficiencies" in a settlement.[67]

---

(approving settlement reached "after extensive arms-length negotiation between very experienced and competent counsel.").

[64] *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985). *See also Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness.").

[65] The largest prior settlement in a similar generic delay case on behalf of direct purchasers was $250 million. *See In re Tricor Antitrust Litig.*, No. 05-340, Dkt. No. 543 (D. Del.). Notably, that settlement was for the entire case, while here, the $512 million settlement covers only the Cephalon Defendants.

[66] MANUAL FOR COMPLEX LITIGATION, § 21.632 at 382 (4th ed. 2005). *See also Curiale,* 2008 WL 4899474 (court granting preliminary approval without hearing).

[67] *Hughes v. In Motion Entm't.*, 2008 WL 3889725, *3 (W.D. Pa. Aug. 18, 2008). *See also Mehling*, 246 F.R.D. at 472 ("A common inquiry is whether the proposed settlement is the result of 'arm's-length negotiations.'"); *Curiale*, 2008 WL 4899474, at *4 (the preliminary approval analysis "often focuses on whether the settlement is the product of arm's-length negotiations.");

As the Court knows, the settlement here was achieved only after years of hard-fought litigation. The voluminous record has permitted DPC Plaintiffs and the Cephalon Defendants to scrutinize the strengths and weaknesses of their claims. Equipped with this knowledge, the parties engaged in intensive settlement discussions spanning over 22 months and involving three rounds of mediation.  The negotiations were detailed, time-consuming, and hard-fought.

### B.     The Advanced Stage of This Case Supports Preliminary Approval

This litigation is on the verge of trial. The Court has issued its summary judgment rulings. The FTC is scheduled to begin trial in June.  Accordingly, Class Counsel can make a fully-informed assessment of the value of the case.

### C.     Class Counsel Are Highly Experienced in Antitrust Litigation Alleging Delayed Generic Drug Competition

Class Counsel believe this is a fair settlement and in the best interests of the Class.  In approving class action settlements, courts often defer to the judgment of experienced counsel who have engaged in arm's-length negotiations,[68] understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Rule 23(e).

Class Counsel have very substantial experience in similar delayed generic entry cases, having been involved in many such cases for over 16 years.[69]  In fact, no other group of lawyers

---

*Gates*, 248 F.R.D. at 444 (granting preliminary approval where there was "nothing to indicate that the proposed settlement . . . [was] not the result of good faith, arm's-length negotiations between adversaries.").

[68] *See Collier v. Montgomery Cnty. Housing Auth.*, 192 F.R.D. 176, 186 (E.D. Pa. 2000) ("the court will give due regard to the advice of the experienced counsel in this case who recommend the settlement who have negotiated this settlement at arm's-length and in good faith"); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) (stating that significant weight should be attributed "to the belief of experienced counsel that settlement is in the best interest of the class").

[69] Some or all of the attorneys here also were counsel in the following prior generic delay cases that settled: *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich. Edmunds, J.) (final settlement approval on November 25, 2002); *In re Buspirone Antitrust Litig.*, MDL Docket No.

has more experience representing classes of direct purchasers in similar cases.  Significantly, the proposed Class includes many of the same wholesalers and retail entities that composed the classes in those prior cases, and no member of the proposed Class has objected to any of the prior settlements.  The Court has first-hand knowledge of the vigor with which Class Counsel have prosecuted this case.

> ### D.    The Proposed Settlement Is Within the Range of Possible Approval

The proposed cash payout here is the largest recovery in a generic delay, antitrust case to date, more than double the previous largest recovery.[70]  The settlement easily falls "within the range of" settlements that could "possibl[y]" be worthy of final approval as fair, reasonable, and adequate,[71] especially considering that two defendants remain.  Whether a settlement is granted

---

1413 (S.D.N.Y. Koeltl, J.) (final settlement approval on  April 7, 2003); *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. Young, J.) (April 9, 2004); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol Myers Squibb Co.*, No. 1:04-cv-248 (D.D.C. Sullivan, J.) (Nov. 30, 2004); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-mdl-1317 (S.D. Fla. Seitz, J.) (April 19, 2005); *In re Remeron Antitrust Litig*, No. 03-CV-0085 (D.N.J. Hochberg, J.) (Nov. 9, 2005); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, No. 1:04 CV-01620 (D.D.C. Huvelle, J.) (April 24, 2006); *Meijer, Inc. et al. v. Warner Chilcott, & Barr Pharma. Inc.  et al.*, No. 05-2195 (D.D.C. Kollar-Kotelly J.) (April 20, 2009); *In re Tricor Antitrust Litig.*, No. 05-340 (D. Del. Robinson, J.) (April 24, 2009); *In re Nifedipine Antitrust Litig.*, MDL No. 1515  (D.D.C. Leon, J.) (Jan. 31, 2011); *In re OxyContin Antitrust Litig.*, No.04 md 1603 (S.D.N.Y. Stein, J.) (Jan. 25, 2011); *Meijer, Inc. v. Abbot Labs.*, N.D. Cal. No. 07-5985 (N.D. Cal. Wilken, J.) (August 11, 2011); *In re Wellbutrin SR Antitrust Litig.*, No.04-5525 (E.D.Pa. Stengl, J.) (Nov. 21, 2011); *In re D.D.A.V.P. Antitrust Litig.*, No. 05 Civ. 2237 (S.D.N.Y. Seibel, J.) (Nov. 28, 2011); *Rochester Drug Co-Operative et al. v. Braintree Labs. Inc.*, No-07-142 (D. Del. Robinson, J.) (May 31, 2012); *In re Neurontin Antitrust Litig.*, No. 02-1830  (D.N.J. Hochberg, J.) (Aug. 6, 2014); *Mylan Pharma., Inc. v. Warner Chilcott, LTD*, No. 12-cv-3824 (E.D. Pa Diamond, J.)(Sept. 15, 2014); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv12141 (E.D. Mich. Cohn, J.) (Jan. 20, 2015).

[70] *See*, *e.g. In re Tricor Antitrust Litig.*, No. 05-340, Dkt. No. 543 (D. Del.) ($250 million).  The next largest was *In re Buspirone Antitrust Litig.*, MDL Docket No. 1413, Dkt. No. 22 (S.D.N.Y.), which settled for $220 million.  Thus, the proposed settlement here is larger than the prior two largest settlements combined.

[71] *See*, *e.g., Samuel v. Equicredit Corp.,* 2002 WL 970396, *1 n.1 (E.D. Pa. May 6, 2002) (quoting Newberg on Class Actions § 11.25 (1992)).

*final* approval is determined at the final fairness stage in accordance with  *Girsh v. Jepson*, 521
F.2d 153 (3d Cir. 1975), which enumerates nine factors to be considered by courts assessing the
fairness of a settlement under Rule 23(e).[72]  At the *preliminary* approval stage, by contrast,
courts simply determine if the settlement could possibly be approved using the *Girsh* factors.[73]

The proposed Settlement is in the best interest of the Class.  In its rulings on summary
judgment and other motions, the Court has provided the parties with guidance useful to their
evaluation of the likelihood of success in this litigation, which is informative of the range of
potential recoveries.[74] The proposed Settlement, if finally approved, will result in a settlement
fund of $512 million, and free Class members from continued litigation against the Cephalon
Defendants.  Compared to litigating to final resolution, the certain immediate receipt of the
proceeds of the Settlement establishes an initial presumption that the settlement is "fair,
adequate, and reasonable."[75]

---

[72] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the
reaction of the class to the settlement; (3) the stage of the proceedings and the amount of
discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to
withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of
the best possible recovery; and (9) the range of reasonableness of the settlement fund to a
possible recovery in light of all the attendant risks of litigation.  *See Kaplan v. Chertoff*, No. 06-
5304, 2008 WL 200108, *2 n.1 (E.D. Pa. Jan. 24, 2008).

[73] *See Curiale*, 2008 WL 4899474, at *8 n. 4 ("[a]t the preliminary approval stage, however, we
need not address all of these factors, as 'the standard for preliminary approval is far less
demanding.'") (quoting *Gates*, 248 F.R.D. at 444 n.7).

[74] *See, e.g., In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 334 (E.D.N.Y. 2010)
(where "critical evidentiary rulings on the parties' motions in limine in the weeks before trial in
this action served to clarify the parties' relative likelihood of success," settlement discussions
were well-informed and approval was granted).

[75] *Samuel*, 2002 WL 970396, at *1 n.1.

### E.   THE PLAN OF DISTRIBUTION IS FAIR, REASONABLE, AND ADEQUATE

Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, *i.e.,* the distribution plan must be fair, reasonable and adequate.[76]  Generally, an allocation plan is reasonable if it reimburses class members based on the type and extent of their injuries.[77]

The proposed plan of distribution meets this standard.  As described in the proposed notice to Class members, the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees, incentive awards for named plaintiffs, and costs of litigation, ("Net Settlement Fund"), will be paid to Class members who submit claims based on each Class member's aggregate share of the total Class' purchases of Provigil during the class period.  This proposed plan of distribution is similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency,[78] and should be approved here as well.

### F.   The Proposed Form and Manner of Notice Are Appropriate

#### 1.   Form of Notice.

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court and notice of the final Fairness Hearing.[79] "[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

---

[76] *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000).

[77] *Id.*

[78] *See, e.g., Mylan Pharma., Inc. v. Warner Chilcott,* LTD, No. 12-cv-3824 (E.D. Pa Sept. 15, 2014) (ECF No. 665) (granting final approval to Plan of Distribution); *In re Flonase Antitrust Litig.,* No. 08-cv-3149  (E.D. Pa. June 14, 2013) (ECF No. 496) (same); *Meijer, Inc. et al v. Biovail Corp. et al.*  No. 2:08-cv-02431 (E.D. Pa. Nov. 7, 2012) (ECF No. 485) (same).

[79] *See* Manual §§ 21.312, 21.633.

opportunity to present their objections."[80]   There are two components of notice:  (1) the form of the notice; and (2) the manner in which notice is sent to Class members.

The proposed form of notice, which has been used by Class Counsel in virtually the same form in prior, similar cases, is appropriate.[81]   The proposed notice is designed to alert Class members to the proposed Settlement by using a bold headline, and the plain language text provides important information regarding the terms of the proposed Settlement.[82]  In addition, the proposed notice prominently features Class Counsel's contact information and directions to the firm website for Class Counsel where the Settlement documents and supplemental information will be provided, as well as contact information for the settlement administrator.

## 2.     Manner of Notice.

DPC Plaintiffs propose to send notice by first-class United States mail to each of the 22 Class members, all of which are business entities that have received and followed similar settlement notices.  The list of Class members was drawn from Cephalon's electronic

---

[80] *Ikon Office Solutions*, 194 F.R.D. at 184.

[81] The Cephalon Defendants have reviewed and agreed to the proposed form and manner of notice.

[82] The notice fairly, clearly and concisely describes in plain, easily understood language: the nature of the action; the definition of the Class certified; which Defendants are parties to the proposed Settlement; the significant terms of the proposed Settlement including the total amount the Cephalon Defendants have agreed to pay to the Class; that a Class member may exclude itself from the Class and the implications of doing so; that a Class member may object to all or any part of the proposed Settlement and the process for doing so, including entering an appearance through an attorney if the Class member desires; the process for obtaining a portion of the settlement proceeds; the final approval process for the proposed Settlement and Class Counsel's request for attorneys' fees of no more than one-third of the Settlement and reimbursement of all litigation expenses, and incentive awards to the named plaintiffs; the schedule for completing the settlement approval process, including deadlines for Class members to submit objections to the Settlement, the submission of the motion for final approval of the settlement, and the submission of the motion for attorneys' fees, expenses, and incentive awards to the named plaintiffs; and the binding effect of a final judgment on members of the Class. *See generally* Exhibit B.

transactional sales data, and are otherwise known to Class Counsel.  In circumstances in which all class members can be identified and reached with certainty, the best method of notice is individual notice.[83]  Individual notice by first class mail has been recognized by the courts as appropriate.[84]

### G.    The Court Should Appoint Berdon as Settlement Administrator

DPC Plaintiffs also ask that Berdon, whom Class Counsel has used in prior, similar cases, be appointed as the settlement administrator.[85] Berdon will oversee the administration of the Settlement, including disseminating notice to the Class, calculating each Class member's *pro rata* share of the Settlement fund, and distributing settlement proceeds.

### H.    The Court Should Appoint Morgan Stanley as Escrow Agent

DPC Plaintiffs propose Morgan Stanley, whom Class Counsel has used in prior, similar cases, as escrow agent.  The Cephalon Defendants have approved this selection.[86]

### I.    The Proposed Schedule Is Fair and Should Be Approved

As set forth in the proposed order, DPC Plaintiffs propose the following schedule for completing the Settlement approval process:

---

[83] *See* Manual, § 21.311 at 488 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort.").

[84] *See, e.g., In re Janney Montgomery Scott LLC Fin. Consultant. Litig.*, 2009 WL 2137224, *7 (E.D. Pa. July 16, 2009) (notice by first-class mail). *See also Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, 2007 U.S. Dist. Lexis 86189 (D.N.J. Nov. 21, 2007) ("first-class mail . . . is unquestionably the best notice practicable under the circumstances"); *Wilson v. United Intern. Investigative Servs. 401(k) Sav. Plan*, 2002 WL 734339, *8 (E.D. Pa. Apr. 23, 2002) (notice by first-class mail); *Comer v. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 36042, *4 (D.S.C. Mar. 31, 2011) (notice by first class mail alone found sufficient, where identity of 84 class members was readily ascertainable from defendant's records).

[85] Berdon is well-reputed within the legal, accounting and financial service fields, and frequently handles claims administration in settlement of large, complex antitrust cases.

[86] *See* Exhibit D to Settlement Agreement (Escrow Agreement).

- Within 10 days from the date of filing for preliminary approval, the Cephalon Defendants shall serve notices pursuant to the Class Action Fairness Act of 2005;

- Within 15 days from the date of preliminary approval, notice is mailed to each member of the Class;

- Within 45 days from the date that notice is mailed to each member of the Class, Class members may request exclusion from the Class or object to the Settlement or attorney's fees, expenses and incentive awards;

- Within 7 days from the expiration of deadline for Class members to request exclusion from the Class or object to the Settlement and/or attorney's fees, expenses and incentive awards, Class Counsel will file: (a) a motion and memorandum in support of final approval of the Settlement; and (b) Class Counsel's petition for attorney's fees, expenses and incentive awards;

- On a date to be set by the Court no less than 100 days following preliminary approval, the Court will hold a final Fairness Hearing.

This schedule is fair to Class members. It gives Class members ample time for consideration of the Settlement before the deadline for opting-out and/or submitting objections. Specifically, Class members will have the notice for 45 days before the deadline to request exclusion from the Class or object to the Settlement. And as noted herein, the notice will, *inter alia*, explain the Settlement, inform Class members of Class Counsel's intent to move for attorney's fees, expenses and incentive awards, and direct Class members as to how they can get more information or answers to any questions they may have. In addition, the schedule allows the full statutory period for the Cephalon Defendants to serve its Class Action Fairness Act notice pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view. Given that Class members have familiarity with this type of litigation, the schedule is fair.

## V.    CONCLUSION

For the foregoing reasons, DPC Plaintiffs respectfully request that the Court enter the proposed Order.

Dated:  April 17, 2015                  Respectfully submitted,

By: /s/ Bruce E. Gerstein
Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
Joseph Opper
Kimberly Hennings
88 Pine Street, 10th Floor
New York, NY 10005
Tel:  (212) 398-0055
Fax: (212) 764-6620

*Lead Counsel for Plaintiffs in the King Drug*
*Direct Purchaser Action*

| | |
|---|---|
| BERGER & MONTAGUE, P.C.<br>Daniel Berger<br>David F. Sorensen<br>Eric L. Cramer<br>Daniel C. Simons<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Tel: (215) 875-3000<br>Fax: (215) 875-4604<br><br>*Liason Counsel and Member of the*<br>*Executive Committee for Plaintiffs in the King*<br>*Drug Direct Purchaser Action* | NASTLAW LLC.<br>Dianne M. Nast<br>Erin C. Burns<br>1101 Market Street, Suite 2801<br>Philadelphia, PA 19107<br>Tel: (215) 923-9300<br>Fax: (215) 923-9302<br><br>*Counsel for SAJ Distributors, Inc., and*<br>*Stephen L. LaFrance Holdings, Inc. and*<br>*Executive Committee for Plaintiffs in the King*<br>*Drug Direct Purchaser Action* |
| ODOM & DES ROCHES, L.L.P.<br>Stuart E. Des Roches<br>650 Poydras Street, Suite 2020<br>New Orleans, LA 70130<br>Tel: (504) 522-0077<br>Fax: (504) 522-0078<br><br>*Executive Committee for Plaintiffs in*<br>*the King Drug Direct Purchaser Action* | FARUQI & FARUQI LLP<br>Peter Kohn<br>101 Greenwood Avenue, Suite 600<br>Jenkintown, PA 19046<br>Tel: (215) 277-5770<br>Fax: (215) 277-5771<br><br>*Counsel for Rochester Drug Co-Operative,*<br>*Inc.* |
| SMITH SEGURA & RAPHAEL, LLP<br>David P. Smith<br>Susan C. Segura<br>3600 Jackson Street, Suite 111<br>Alexandria, LA 71303<br>Tel: (318) 445-4480<br>Fax: (318) 487-1741<br><br>*Executive Committee for Plaintiffs*<br>*in the King Drug Direct Purchaser Action* | HEIM PAYNE & CHORUSH, LLP<br>Russell Chorush<br>Chase Tower<br>600 Travis, Suite 6710<br>Houston, TX 77002<br>Tel: (713) 221-2000<br><br>*Counsel for Plaintiffs in the King*<br>*Drug Direct Purchaser Class Action* |
| GRANT & EISENHOFER, P.A.<br>Linda P. Nussbaum<br>485 Lexington Ave.<br>New York, NY 10017<br>Tel: (646) 722-8500<br>Fax: (646) 722-8501<br><br>*Counsel for Plaintiffs Meijer, Inc. and Meijer*<br>*Distribution, Inc. and Executive Committee for*<br>*Plaintiffs in the King Drug*<br>*Direct Purchaser Action* | |