IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KING DRUG COMPANY OF FLORENCE, INC., *et al.*,<br><br>    *Plaintiffs*,<br> -against-<br><br>CEPHALON, INC., *et al.*,<br><br>    *Defendants*. | No. 2:17-cv-01797-MSG |
| UNITED HEALTH CARE SERVICES, INC.,<br><br>    *Plaintiff*,<br> -against-<br><br>CEPHALON, INC., *et al.*,<br><br>    *Defendants* | No. 2:17-cv-00555-MSG<br><br>Hon. Mitchell S. Goldberg |

**MEMORANDUM IN SUPPORT OF RANBAXY'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE OR ARGUMENT AT
<u>TRIAL REGARDING ALLEGED CONSUMER HARM</u>**

Defendants Sun Pharmaceutical Industries, Ltd., Ranbaxy Laboratories, Ltd., and Ranbaxy Pharmaceuticals, Inc. (collectively, "Ranbaxy") respectfully submit this Memorandum of Law in support of their motion *in limine* to preclude Plaintiffs from presenting evidence or argument at trial that the Ranbaxy-Cephalon settlement allegedly harmed consumers.

It is undisputed that Plaintiffs do not represent consumers—they are large, sophisticated commercial entities and undisputedly did not experience any "consumer harm." Because Plaintiffs are not consumers, the notion of "consumer harm" is irrelevant and it would be unfairly prejudicial to allow Plaintiffs to offer evidence of alleged "consumer harm" here. Further, evidence of "consumer harm" is entirely irrelevant to the rule of reason analysis this jury will be asked to conduct. In isolation, evidence of alleged "consumer harm" paints a materially incomplete, deceptive, and confusing picture of the actual facts and circumstances, particularly in light of evidence that Plaintiffs passed-on the alleged harm to consumers and reaped its benefits.

Even if some mention of "consumer harm" could be relevant—and it is not—allowing Plaintiffs to "quantify" this purported "harm" would be a clear end-run of this Court's bifurcation order and would prejudice the jury. This is precisely why the Court correctly restricted other plaintiffs' attempt to present this type of evidence in the June 2017 trial with retailers and Apotex.

Finally, if the Court is inclined to breach the harm barrier set up by the bifurcation order and allow Plaintiffs to introduce evidence regarding alleged consumer harm, then Ranbaxy should be permitted to tell the jury the complete story and introduce evidence (i) that the alleged consumer harm has been rectified, such as through evidence of the settlement agreements with consumers, and (ii) about the Plaintiffs' role in passing-on any alleged harm to consumers.

## **ARGUMENT**

Plaintiffs should be precluded from introducing at trial evidence or argument regarding alleged consumer harm for several reasons:

*First*, it is undisputed that Plaintiffs are not consumers and do not represent consumers. These Plaintiffs include some of the largest companies in the United States, who themselves sold Provigil to consumers. Put simply, Plaintiffs did not and could not have experienced any alleged consumer harm.

*Second*, even if Plaintiffs somehow represent consumer interests or seek to remedy "consumer harm"—which they do not—Plaintiffs' assertions that the Ranbaxy-Cephalon settlement "harmed consumers" have no relevance to the issues that the jury will have to decide. The issue for the jury is whether there was delayed competition—not whether consumers were somehow harmed as a result. *See In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 151 (3d Cir. 2017) (explaining that the jury must decide whether the agreements at issue "caused an antitrust injury by delaying generic competition"); *King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.*, 791 F.3d 388, 408-09 (3d Cir. 2015) ("*Actavis* does not stand for the proposition that the parties must reach the most procompetitive settlements possible. Instead, we read *Actavis* to hold that antitrust law may prohibit settlements that are anticompetitive because, without justification, they delay competition for longer than the patent's strength would otherwise permit."). Indeed, this Court precluded plaintiffs from quantifying alleged consumer harm during opening statements and limited testimony related to consumer harm during witness testimony of Apotex's expert Dr. Singer, sustaining Ranbaxy's objections when Apotex's counsel attempted to "take [Dr. Singer] through the analysis" related to "harm to consumers." *See* June 29, 2017 Trial Tr. at 34:06 – 34:13.

Further, allowing Plaintiffs to broadly assert "consumer harm" in this context is also tantamount to an argument that alleged reverse-payments are *per se* illegal (because they purportedly harm consumers), an argument that was expressly rejected in *Actavis* in favor of analysis under the rule-of-reason. *FTC v. Actavis, Inc.*, 570 U.S. 136, 158-59 (2013); *see also* Mem. Op., Dkt. 929, Civ. No 2:06-cv-01797-MSG, at 12-15 (Dec. 14, 2015) (rejecting Plaintiffs' *per se* theories of liability). Permitting Plaintiffs to introduce evidence regarding alleged consumer harm would contravene the bifurcated rule-of-reason framework under which the jury must analyze the Ranbaxy-Cephalon settlement.

*Third*, it would be unduly prejudicial to allow Plaintiffs to float before the jury large numbers of alleged consumer "harm" that have nothing to do with the issues the jury will decide.[1] Allowing Plaintiffs to "quantify" alleged consumer harm carries a significant risk of confusing the jury, as such evidence would create the misimpression that Plaintiffs in fact represent consumers' interest or that consumers are entitled to relief as a result of Plaintiffs' claims. That is undisputedly not the case, and, in fact, Plaintiffs' expert, Dr. Leitzinger, previously disclaimed any opinion of alleged "consumer harm" and any attempt to characterize his quantification of *Direct Purchaser Plaintiffs'* alleged "overcharges" as "consumer harm" will undoubtedly confuse the jury.[2] Moreover, during the June 2017 trial in this case, this Court precluded Plaintiffs from quantifying

---

[1] During pre-trial discussions, counsel for Plaintiffs have indicated that they intend to offer a "quantification" of alleged consumer harm, including during opening statements. The source of this purported "quantification" is unclear, though it likely relates to DPPs' expert Professor Einer Elhauge, who opines regarding purported "estimated consumer welfare harm," *see, e.g.*, Reply Expert Report of Prof. Einer Elhauge, at 110-126 (July 1, 2011), or DPPs' expert Jeffrey J. Leitzinger, who opines in his recent report that "the overcharges I have estimated in this case are indicative of the *harm incurred by consumers*," *see* July 30, 2018 Report of Jeffrey J. Leitzinger at 6-7 (emphasis added). Moreover, Dr. Leitzinger's July 30, 2018 report is the first time that he is offering an opinion on the quantification of consumer harm, and Ranbaxy is separately seeking to move to strike this report.

[2] *See* Plaintiffs Mem. in Support of Motion to Strike the July 30, 2018 Report of Dr. Leitzinger and attachments thereto, filed concurrently herewith.

4

alleged consumer harm during opening statements.  *See* June 14, 2017 Trial Tr., *Apotex v. Cephalon, et al.* Civ. No. 06-2768, at 12:7-13.  Any modicum of probative value associated with Plaintiffs' alleged consumer harm is dwarfed by the danger of unfair prejudice or risk of jury confusion and should be precluded.

*Fourth*, given this Court's bifurcation of liability and damages, evidence of alleged "harm" should be precluded from the liability phase and, if permitted at all, should only be permitted during the damages trial, if any.  Permitting Plaintiffs to present evidence of alleged consumer harm, including any quantification thereof, would be an obvious end-run of this Court's bifurcation order.  This is particularly true given the fact that the Parties agreed during the January 2016 pretrial conference that the Court need not rule on whether Ranbaxy would be allowed to present evidence that Plaintiffs passed-on any alleged harm to consumers until the damages phase of the trial. Jan. 19, 2016 Pretrial Conference Tr. at 145:11 – 148:8.  There, Ranbaxy represented that it did not intend to introduce during the liability phase evidence of Plaintiffs passing-on their damages to their customers.  *Id.*  Similarly, Ranbaxy explained that, in the liability phase, Ranbaxy would not argue that Plaintiffs did not suffer an injury-in-fact because of the generic bypass phenomenon.  *Id.*  Accordingly, the Parties agreed that the Court could defer ruling on these issues until the damages phase, if any.  Allowing Plaintiffs to introduce any evidence of consumer "harm," including a quantification of that "harm," divorced from Ranbaxy's counter-arguments and evidence regarding Plaintiffs pass-on would result in the jury hearing only one side of the story.

To draw the line here, Ranbaxy suggests that it would be permissible for Plaintiffs to argue that, as a result of the agreements, generic entry was delayed and as a consequence Cephalon was able to charge higher prices for Provigil than it would have been able to if generics were available.

5

By contrast, any arguments about the quantification of those alleged overcharges and arguments about "consumer harm"—particularly when those alleged overcharges are *not* the measure of what consumers paid at all—are impermissible and should be excluded.

*Fifth*, evidence regarding alleged consumer harm is an appeal to jurors' self-interest as consumers or taxpayers.  Any argument, reference, or evidence suggesting that jurors would be better off as consumers or taxpayers as a result of this lawsuit, or explaining how any damages award might be spent or allocated, is irrelevant.  Such references—designed to appeal to the self-interest of the jury—are "patently improper" and should be excluded.  *See, e.g. United States v. Trutenko*, 490 F.2d 678, 679 (7th Cir. 1973) ("Since pecuniary interest would necessarily disqualify a prospective juror from service, it is patently improper to make an appeal to that interest in closing argument."); *In re Chi. Flood Litig.*, No. 93 C 1214, 1995 WL 437, at *11 (N.D. Ill. July 21, 1995) ("reference to taxpayer liability will invite the jury to depart from its role as neutral arbiter and decide the case on the basis of personal interest and bias"); *United States ex rel. Health Dimensions Rehab., Inc., v. RehabCare Grp., Inc.,* No. 4:12CV00848 AGF, 2013 WL 5340910, at *2 (E.D. Mo. Sept. 23, 2013) (plaintiffs could not "appeal to the jurors as taxpayers").

*Finally*, if Plaintiffs are permitted to introduce evidence of consumer "harm," then Ranbaxy must be permitted to introduce evidence to show that the alleged harm has been rectified and Plaintiffs' pass-on of that alleged "consumer harm."  Such counter-evidence would include, for example, evidence of consumer settlements and evidence that Plaintiffs passed-on alleged overcharges.[3]  If Plaintiffs want to ring this bell, Ranbaxy must be allowed to answer the call.

---

[3] *See*, *e.g.*, reported settlements with End-Payor Plaintiffs, such as End-Payor Plaintiffs' Status Report, Civ No. 2:06-cv-01833-MSG, at 1 (Jan. 23, 2018) (EPP-Mylan settlement); *Teva Pharm. Indus. v. United Healthcare Svcs.*, Civ. No. 16-4870, 2018 WL 1898911, at * 1 (Apr. 20, 2018) (EPP-Teva settlement).

6

For the foregoing reasons, Ranbaxy respectfully requests that the Court preclude Plaintiffs from presenting evidence or argument at trial regarding consumer "harm."

| | |
|---|---|
| August 23, 2018 | Respectfully submitted, |
| | /s/ *J. Douglas Baldridge*<br>J. Douglas Baldridge (admitted *pro hac vice*)<br>Lisa Jose Fales (admitted *pro hac vice*)<br>Danielle R. Foley (admitted *pro hac vice*)<br>Vincent E. Verrocchio (admitted *pro hac vice*)<br>VENABLE LLP<br>600 Massachusetts Avenue, NW<br>Washington, DC 20001<br>(202) 344-4000<br>jbaldridge@venable.com<br>ljfales@venable.com<br>dfoley@venable.com<br>vverrocchio@venable.com<br><br>Neill C. Kling<br>HARKINS CUNNINGHAM LLP<br>4000 Two Commerce Square<br>2001 Market Street<br>Philadelphia, PA 19103<br>(215) 851-6709<br>nkling@harkinscunningham.com<br><br>*Attorneys for Defendants Sun Pharmaceutical Industries, Ltd., Ranbaxy Laboratories, Ltd. and Ranbaxy Pharmaceuticals, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2018, Ranbaxy's Motion *in Limine* to Exclude Evidence or Argument Regarding Alleged Consumer Harm was served on counsel for all parties through this Court's CM/ECF System.

Dated:  August 23, 2018

                                                /s/ *J. Douglas Baldridge*
                                                  J. Douglas Baldridge